UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-80152-RS

UNITED STATES OF AMERICA,

v.

JAMES RUSSELL HUNTER III,

    Defendant.
_____/

## FACTUAL PROFFER

The United States and Defendant JAMES RUSSELL HUNTER III ("Defendant" or "Hunter") agree that had this case gone to trial, the Government would have proved the following facts, among others, beyond a reasonable doubt, and that these facts are true and correct and establish Defendant's guilt of the charged offense.

The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

Medicare was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b). Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, including durable medical equipment ("DME"), that were medically necessary and

1

ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose, such as prosthetic limbs, back braces, knee braces, and wheelchairs. It also includes wound care items.

For Florida beneficiaries, Medicare Part B's insurance concerning DME and related health care benefits, items, and services, was administered by CGS Administrators, LLC ("CGS") pursuant to a contract with HHS. Among CGS's responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

DME companies, physicians, and other health care providers that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a National Provider Identifier number ("NPI"). In the application, the provider acknowledged that to be able to participate in the Medicare program, the provider must comply with all Medicare-related laws and regulations. The NPI allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries.

Medicare permitted DME companies to submit claims for reimbursement electronically. Each claim required certain important information, including: (a) the Medicare beneficiary's name; (b) the Medicare beneficiary's identification number; (c) the name and NPI of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (d) the health care benefit, item, or service that was provided or supplied to the beneficiary; (e) the billing codes for each benefit, item, or service; and (f) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

Under Medicare rules and regulations, DME or other related health care benefits, items, or other services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare. When electronically submitting a claim, the provider certified that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

Medicare, through CGS, generally would pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other qualified health care providers. Payments under Medicare Part B were often made directly to the DME company rather than to the patient/beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care providers. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

BRACEONE MEDICAL SUPPLY LLC ("BRACEONE") was a Florida company with a principal place of business in Palm Beach County, Florida. It was organized on or about February 13, 2019 by Robert Rodriguez ("Rodriguez"). It was purportedly in the business of supplying DME to Medicare beneficiaries. As of January 21, 2020, BRACEONE was eligible to receive payments from Medicare for DME supplied to beneficiaries, if the DME was medically necessary. On February 25, 2020, Rodriguez was removed from the corporate records, and the Defendant became the sole authorized person for BRACEONE.

SOFLO MEDICAL SUPPLY LLC ("SOFLO") was a Florida company with a principal place of business in Palm Beach County, Florida. It was organized on or about January 14, 2020

3

by the Defendant. It was purportedly in the business of supplying DME to Medicare beneficiaries. As of March 10, 2020, SOFLO was eligible to receive payments from Medicare for DME supplied to beneficiaries, if the DME was medically necessary.

Medicare claims data establishes that BRACEONE and SOFLO chiefly submitted claims for different types of DME, including: (i) knee orthosis; (ii) lumbar-sacral orthosis; (iii) ankle/foot orthosis; and (iv) wrist/hand orthosis. These claims falsely and fraudulently represented that the various DME provided were medically necessary, prescribed by a doctor, and had been provided by BRACEONE or SOFLO to Medicare beneficiaries. The medical providers and beneficiaries listed on the claims to Medicare had, in fact, never even heard of BRACEONE or SOFLO. Moreover, the beneficiaries never needed the DME billed to Medicare, nor did every beneficiary receive the DME in many cases.

The Defendant caused to be submitted by co-conspirators, Medicare claims that stated BRACEONE or SOFLO had provided DME to Medicare beneficiaries pursuant to orders and prescriptions of various medical providers, who had been assigned unique NPIs. Medicare would not have issued the claim payments if the NPIs associated with the providers were not real and not actually associated with them.

Beginning on or about March 13, 2020, and continuing through on or about October 2, 2020, the Defendant caused the submission of false and fraudulent Medicare claims on behalf of BRACEONE, in the amount of $2,240,640, and SOFLO, in the amount of $910,933, for DME that was neither ordered by a medical provider, medically necessary, nor provided to the beneficiary as claimed. Based on these false and fraudulent claims, Medicare paid BRACEONE approximately $766,541 and SOFLO approximately $133,738. These claims were paid via direct

deposit to the corporate bank accounts for BRACEONE and SOFLO, or by check to BRACEONE. During the time frame of the fraud scheme, the Defendant was the sole signatory on the corporate bank accounts for BRACEONE and SOFLO. The Defendant used the proceeds of this scheme to further the fraud, including by sending some payments to co-conspirators, and for his own personal benefit.

The foregoing facts do not describe all the facts known to the Government in this matter, or fully describe all of the acts the Defendant and his co-conspirators engaged in, but are offered for the limited purpose of establishing a sufficient factual basis to support the Defendant's plea of guilty to the charge of conspiracy to commit health care fraud.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 8/29/23

BY: _____
SHANNON SHAW
ASSISTANT U.S. ATTORNEY

DATE: 8/29/23

BY: _____
JONATHAN MELTZ
ATTORNEY FOR DEFENDANT

DATE: 8/29/23

BY: _____
James Hunter (Aug 29, 2023 14:21 EDT)
JAMES RUSSELL HUNTER III
DEFENDANT

5